On the docket is 517-0444 Cushing v. Willis. Thank you so much. Okay, Mr. Farr, whenever you're ready. Thank you. May it please the court, counsel. My name is William Farr, and I'm here as the attorney for the plaintiffs' appellants Linda Bailey and Lyndon Cushing. This case is appealed as a result of an adverse ruling against my client that was entered on October 17th of 2017. As I said, a finding that was against the plaintiffs. We've raised three issues that are whether the trial court erred in interim judgment for the defendants, whether the trial court had subject matter jurisdiction, I'm sorry, on the issue of the transfer of the deed, whether the trial court erred in interim judgment for the defendants, and whether the plaintiff's procedural due process rights were violated because they had no notice that the court was going to consider the transfer of ownership at that time. Some of the basic facts, there was an agreement entered into. It was a rent-to-own contract that was a part of the appellate brief. That's not a very good contract, but the parties apparently abided by it for a period of time. What that says is they were to pay rent in the amount of $300 per month towards a purchase price of $15,000. There was no interest to be charged in that. There also is a provision telling that we believe leads more to this considering a purely rental contract. There's a fact in there that says that the house was not to be taken until the defendants or unless the defendants were two months behind on rent. As I said, there was no interest to be charged. Payments, had they been complied with, would have been the last payment on July 1 of 2013. As it is- Is there any deadline as to when the payments were to be made? No, there isn't anything on there. It just says the $15,000 at the rate of $300 per month, Your Honor. And were these people in possession living in there? Yes, Your Honor. The defendants in this case were in possession. At that time, there was a sublease later on down in the history of the rental agreement. What's the difference in your argument between a rent-to-own and a contract for deed? With the rent-to-own contract, there's a provision that at some point in time, when the elements are right and they've been complied with and there's general compliance on behalf of the buyers, the tenants, excuse me, that it can ripen into a contract for purchase. An installment contract or a contract for deed, I believe there's the equitable interest in the interest that the contract purchasers had in that property. With the rent-to-own contract, that isn't something that occurs until the provisions are right for the rent-to-own contract. You actually, I don't want to say morph into it, but the standard has been reached that now they can go ahead and consider it a contract for deed. So that equity doesn't rise until they've completed? No, in a rent-to-own contract, my position is that it does not because it's still That's what I'm asking. Yes, it does not at that point. But with an installment contract or a contract for deed, they do have that interest because the goals are different in the two contracts. A contract for deed technically could, but my position is that it would morph into a rent-to-own contract. The rent-to-own contract can become a contract for purchase. Does the rent-to-own generally have a term? I mean, usually if you rent an apartment, you have a year contract. There was no term on this rent-to-own contract. No, correct, Your Honor. It was just when the $15,000 was paid over the course of 300, $15,000 paid at $300 per month, which would have been 50 months. So when I go into the law, which I did not see in the briefs, I may have missed it, but I don't see a big effort to distinguish between a rent-to-own and a contract for deed in the briefs. No. But I'm going to find that in the law, right, if I research it, what you just described? That's my opinion, yes, Your Honor. Now, if I had found a case that said that, obviously it would have been in the briefs. That's what I figured. That's why I asked the question. Yes, Your Honor. So do you see it? Can you cite me to any case that talks about the rent-to-own versus a contract for deed? No. And really, in this case, what's the difference? If you had a contract for deed, you could still file an FD&D action, couldn't you? Yes, Your Honor. Under a different – I believe under a different provision of the first full-entry detainer statute. Okay. So that's the real distinction here is that on a rent-to-own, the provision of the statute that you – your client used would have been different than the one used for the contract for deed. Yes, Your Honor. Okay. Yes, Your Honor. Now, the follow-up to that is, so what? So what if it was a different provision? Well, I guess it gets to the point with – and I hate to dwell on that issue too much, but I have to. It's a rent-to-own contract. I don't think the interpretation at the time with a document that says rent-to-own, it's going to be fulfilled as a contract for purchase. The rental agreement is how it starts out, and at points in time, if there's certain triggering events, then it becomes a contract for deed. But that's your opinion and you don't have any law to support it, basically. No, Your Honor, that's correct. Okay. Yes, Your Honor. All right. But by the language – what I'm saying is by the language that parties intended it to be a rental contract, it was not an installment contract for purchase. The mere potentiality of it developing into a contract for purchase or at least a sales agreement being fulfilled from the contract doesn't change the fact that it was a rental agreement. And by the face of the document, we believe that the fact they said that it was not to be house taken back, if you will, that shows that it was more towards a rental agreement because in a contract for deed, there could be language with the two months, such as in this, but normally there isn't. So I was a bit confused in the factual situation. If it took them more than a couple of years beyond the 50 months, Yes, Your Honor. were the owners getting any income from the rental of that? You said there was a sublet, but I didn't notice anything in there about the sublet in the fact. No, no, and that was a collateral issue. They had done it, but we might have argued that there was a mitigation of damages issue, but there was not. But who was getting the money during these two interim years? Because it seemed as if they were saying that they overpaid the purchase price. In the end, Your Honor, they had not at the time it was filed. It was after that that they tendered the amount that we would have paid that in full, but the No one's notice was given. Yes, correct. And then they over tendered. The court found at least. Yes, yes, I believe to the amount of $450. But we think Do you agree that the amount of money that was paid was satisfied and $450 too much? Do you agree with that portion, that very limited portion of the court's finding? Yes. Yes, we do. The issue, to get back to your question, the money was paid. What money did came in, came to the plaintiffs. But it was obviously it would have been July 1st of 2014 would have been the last payment. And it wasn't made at that point. Now we're clearing the 17th. So that is, I think, a no argument, factual argument towards the fact that it was a rent-to-own contract instead of a contract for deed. Because it contemplated $15,000, $300 a month. That was not complied with. And then it turned in to the sporadic payment standard, ultimately totaled up to the $15,000. But not at the point it should have totaled up on, well, August 1st it would have been. That July 2014 date, was that in the agreement? No, Your Honor. I don't think so. All that was in that agreement was how much money per month and then the total price, right? Yes, Your Honor. So once, and presumably it was monthly, right, because it said per month, right? Yes, Your Honor. So if the money was not paid as it was due, then you get in to the waiver provisions, where your clients can voluntarily waive the monthly provision and agree to continue the contract, correct? Yes, Your Honor. And isn't that what typically happens in a contract case where your client had two options, take the property back or allow the folks to continue to live there and continue to collect money as it comes in? Money is rent at that point in time, Your Honor. And that's a good point because does the rent to own expire, in your view? I mean, could it be a month-to-month tenancy after July of 2014? Yes, Your Honor. Was that ever raised? No, Your Honor, not amongst the parties, no. So what was litigated below really was the rent to own agreement, regardless of what interest it conveyed or didn't convey. To a point, yes. And at the very end, or close to the very end, the deed for the transfer of the ownership of the property was raised by the appellant's counsel, and the judge then proceeded to make that a statement in his ruling that there would be a deed needed to be transferred. I believe there was an amount of money to be refunded. There was an overpayment, and that amount of money had to be refunded, and then a deed had to be prepared by one of the parties anyway, and my client signed that transferring their interest over into the property. Was that order stayed by the court? It is. I believe at the very end, Your Honor, it says that they didn't have to take up the matter with the Hall case, which is a collateral case that's not before the court at this time, because the transfer of possession took care of any interest that they had in that. So the deed has or has not issued? It has not issued. And beyond that, what I think probably the thrust of the argument is the procedural due process, and we believe, and I think, well, I've been taught this. It's not in the record either, but it was something that I was taught. If we saw something that needed to be changed or had the potential to be changed, we had obligations as lawyers to see to that, and I think Rule 3.1 of the Illinois Rules of Conduct of 2010 provide that lawyers should not assert an issue in a proceeding unless there is a basis in law and fact for doing so that is not frivolous, which sets forth a good faith argument for an extension, modification, or reversal of existing law. Are you signing the Supreme Court rule? Rules of Professional Conduct 3.1. And what are you arguing in that regard? The procedural due process, Your Honor. Are you saying that the other side was at risk or violated the Rules of Professional Conduct? No, no, no, Your Honor. I don't want to miss your point there. Well, I'm raising something that I think I have an ethical obligation to raise. I don't think there are any cases that I have found yet that would put procedural due process on the shoulders of the court unless there were an administrative agency and it's making sure that the state gives due process to the citizens. In this situation, what my argument is, and why I included that language just now, we have to provide procedural due process is good for everyone. So the courts need to have an imposition, if you will, to abide with procedural due process rights. And in this situation, there was no indication in the pleadings, in the initial statements of the court, initial statements of trial counsel, who is the appellate counsel, that that would be something that would be dealt with, a transfer of ownership. So there was no notice, no opportunity to be heard, and basically the judge ruled what we say is an afterthought at the conclusion of the proceedings. So the procedural due process are good enough for someone that has an issue with an administrative agency of the state. We believe procedural due process needs to be extended to the judiciary, that the judiciary, the trial courts at least, would extend due process to the litigants before. I do not understand your argument. Our obligation is to enforce the Constitution of the United States as well as the Illinois State Constitution. Yes, Your Honor. Which both contain due process. Yes, Your Honor. But in this situation, the trial court did not afford the plaintiff, the plaintiffs their procedural due process rights. There was no notice that the ownership would be dealt with. There was no opportunity to be heard on the issue of ownership of the property. That was an awful word of the argument, but that is my point. They were deprived of their due process rights, and not as an administrative agency have an obligation to do that to its citizens. I do not understand your argument about administrative agency, but my recommendation to you is that you look at the Bellville-Toyota case. I think that would answer some of your questions. Yes, Your Honor. Do you have anything else you want to say? No, Your Honor. Thank you. Okay. Mr. Featherton. May it please the Court. Counsel. My name is Beth Featherton, and I represent the appellee, Leroy Willis. Ms. Featherton, have you read the Bellville-Toyota case? I have not. Okay. Well, in that case, one of the issues before the Court was subject matter jurisdiction, and the Court talks about matters that are not framed by the pleadings are things that, even though we're courts of general jurisdiction, cannot be the basis of a court order. So my question to you is, and I read your brief about, well, it would be a waste of time and money to go back and ask for the issuance of a deed. But my question to you is, why wasn't there a response of pleading that raised this issue so that the other side would have been on notice, number one? It would have given the Court something to look at. The issue would have been properly framed. Why wasn't that done? Your Honor, I don't believe it needed to be done. Well, obviously, if you ask for a deed, it needed to be done. My contention on that is that this was the subject matter of the complaint. Mike just filed a forcible injury and detainer complaint. There are two ways to get a rent-to-own or installment contract before the Court. One remedy is the foreclosure remedy. However, this contract for deed, I call it contract for deed, I believe this rent-to-own and contract for deed are one and the same. Okay. There was nothing in that contract that distinguished it from an installment contract or a contract for deed. There was no option. Okay. So let's assume, hypothetically, that we agree with you. I use we in the disjunctive because I don't know what my colleagues think. But my point is, even if that is true, and you're correct that foreclosure and F, E, and D were the remedies, foreclosure doesn't give you a deed back. It has nothing to do with issuance of a deed. But let's suppose, hypothetically, that the plaintiffs would not issue a deed after your clients had paid the money. What would you have filed? My interpretation of this is that when the plaintiffs filed their complaint in forcible entry and detainer, it wasn't a standard lease agreement or a tenancy. It was regarding a rent-to-own contract. Okay. But the issue was to kick them out. The issue was saying, get out. It's my house. You haven't paid. But since it's a rent-to-own contract, and that would be true if it was just a standard lease agreement, but it's a rent-to-own contract. Therefore, ownership is germane. Possession and ownership are germane to a rent-to-own contract or installment contract. But your affirmative defense, had it been filed, would have been, we paid, or you waived, or whatever it would have been. And, by the way, Court, you need to issue a deed. I mean, how does that subject matter get before the court if it's not even referenced in the lease? Because it's germane to the rent-to-own contract. Germane doesn't give the court subject matter jurisdiction. What is germane? Relevant. Relevant to the rent-to-own. So if something is just relevant, the court should, sua spate, bring it up? I believe that the issue of ownership was already before the court because the plaintiffs filed a complaint bringing it before the court. I don't think there's anything else to do. It wasn't to get a quiet title or something similar to that. It was to kick them out. You see what I'm saying? Because of a rent-to-own contract. I think there's a difference between a lease and a rent-to-own contract because it was pertaining to a rent-to-own contract. Ownership was at issue. So it would be the same issues we have to bring as defendants. We have to protect our equity interests. We have equity interests in that. You just filed a general denial, right? I don't believe we filed any. What was the response of the defendants to the plaintiffs pleading? I don't know that there was even an answer filed. I believe that it was just we showed up in court and had a bench trial. But the issue of payments made. I think you're right on that. I made a note of that. I don't think there even was a response. But the issues of payments made, because it was a rent-to-own or installment contract, payments made, the defendants' equity in the premises, and their ownership were already before the court because of the contract. Isn't it true that the court, in its statement, in its order, at the end, it was almost like an afterthought. Oh, and by the way, we're going to issue, since you returned the $450 because that was an overpayment, which plaintiffs concede, and then the court says, and we're going, since they've completed the contract, we're going to issue a deed. My question to you is where, in any of the pleadings, was that issue ever even raised for this court to have jurisdiction to do that? I believe it was raised by the plaintiff when they filed their forcible entry and detainer complaint. The mere filing of that is what you're saying. The mere filing of an FB&D also grants the court subject matter jurisdiction for the issuance of a deed. Because of the topic, not because it was a rent-to-own contract. Forcible entry and detainer action wasn't pertaining to a tenancy or a lease, but because it was pertaining to a rent-to-own contract, yes, it did bring ownership before the court. Now, plaintiff says that they used a different section of the FB&D statute than they would have used if it had been a contract for a deed. Do you have a response to that? I don't believe that's true. I believe that if you go to the, actually, there is a, I think it is in the, I'm not sure if it's under forcible entry or if it's under foreclosure, but there is a statute. It's 735 ILCS 515-1106 that requires a foreclosure on installment contracts on residential real estate when the purchase price is to be paid in installments over a period of five years or more, I'm sorry, in excess of five years. And the amount unpaid under the terms of the contract is less than 80%. Well, we did, it was less than 80%, clearly, but it was more, it was less than five years that it was originally to be paid. So the foreclosure statute doesn't apply. So the only other way to get it before the court in an installment contract would be through the forcible entry and detainer. You can go ahead and present what you were originally presenting. I interrupted you at the beginning. Well, the first issue that was brought up was subject matter jurisdiction. Appellant contends that the trial court did not have subject matter jurisdiction over the issue of whether or not the deed should issue, and that since the action was brought in forcible entry and detainer, the trial court could only decide what was put before the court in the complaint. But what the appellant overlooks is the subject matter of the complaint itself. This isn't a complaint, a standard complaint enforceable entry. It's regarding a lease or a month-to-month tenancy. The complaint pertains to a rent-to-own contract, and pursuant to that contract, the purchaser is making monthly payments, and in so doing, making the monthly payments is gaining equity in the premises for the purposes of eventually becoming the owner. When the plaintiff's filed the forcible entry complaint, my contention is the issue of ownership is connected to and during to the complaint. Appellant states in his argument that the trial court's rationale for considering the contract had been fulfilled was that it was unfair of the plaintiffs to send the notice of the contract when they did. This statement is only partly true. It's only part of the court's rationale. The rationale of the trial court was that the bench trial was conducted, evidence was presented, and the defendant proved that they had paid in full, and I don't believe that's at issue at this level at the appellate court. That means that the defendant paid the $15,000 in its entirety, and the plaintiff was simply wrong about their mathematical calculation in the complaint stating that $12,400 was still owed. The trial court pointed out that it would be unfair and unjust to let the plaintiff wait three years past the contract date, continue to accept payments, then declare the contract at an end. So if the court found that, shouldn't the court just have dismissed the FE&D? That's a possibility, but again, since it's a rent-to-own contract, the issue of ownership is at issue, and we proved that we paid for it. Well, we started out asking the plaintiff about this rent-to-own contract, and nobody has provided us with any case law that really tells us what it is. My understanding is that it's the same thing as an installment contract. An installment contract for rent-to-own contract? Contract for deed. Yes, or contract for deed. So if you have a valid contract for deed, and you've paid all the money, and somebody brings an FE&D action with no responsive cleaning, and the court finds you've overpaid, then wouldn't you just dismiss the plaintiff's case? I think so. You could dismiss it, but we went to the bench trial. We proved payment. What follows is the deed should issue. Or a counterclaim to acquired title or to issue deed. But wouldn't we be repeating the same issue? Wouldn't we have to present the same evidence? Normally, without the court's response, granting an issue that perhaps they didn't know was coming. I mean, could they have argued, for example, you say it was a contract for deed. Could they have argued that the contract for deed expired in 2014 and that it became a rental? Had they known you were going to ask for an issue? They would have to have provided notice, so no. There was no notice given. What do you mean there was no notice? There was no notice that the contract was an end. The only notice that was given was three years later, right before they filed the complaint. But my point is, under the terms of the contract, the contract could have, there are all kinds of contract defenses that could have been claimed had you raised the issue on the issuance of a deed.  Or that it ended in 2014 and that your clients were just retained as renters, as evidenced by the fact they allowed a sublet. I mean, I'm just throwing out examples. I have trouble, I'm sorry, I didn't mean to interrupt you. Go ahead. I have trouble with that because they had already filed the forcible entry. So had they not filed the forcible entry, they might have come up with other issues like that. But they had already asked, they already had presented that before the court, stating that this contract was in effect. So they can't really do that. What I'm saying is the forcible entry and detainer was just to kick you out based upon nonpayment. So you're saying it was a contract for deed. They're just saying there was this agreement. What that agreement is and its legal effect was really not litigated. What was litigated was payment, right? And ownership pertaining to the rent-to-own contract. Well, payment was what was litigated. Is there anywhere in the record where it's really discussed the legal effect of the document being ownership versus a rent-to-own versus a contractor deed? I mean, it seemed to me that this was about payment. But isn't that subsumed in the whole action? Because obviously it was stipulated that it had been paid in full. Overpay. Overpay, yeah. Yes, Your Honor, I believe that is correct. The question becomes whether the plaintiffs had the notice or the right to bring up the legal effect of the contract is what I'm asking. Was that ever litigated? Nothing was litigated except for payment made in full pursuant to the rent-to-own contract. And I believe there is a big difference in a forcible entry and detainer action if you're litigating a tenancy, a lease, or as here, a rent-to-own contract. It was clearly established that the defendants paid in full, not overpaid. And therefore, ownership was before the court. Counsel, I'm curious. So you've got a bench trial and you've come to closing arguments. And as part of your closing argument, did you make the argument, look, we've overpaid and, by the way, we're entitled to a deed? I mean, is that how this happened, that you make the closing argument and the court makes an oral ruling and addresses it and that's it? I mean, did you even mention or ask the court to please order the transfer of the deed? I would have to go back and read the transfer, Your Honor. I believe that my argument was my clients paid in full. Yes, they paid late, but ultimately they paid in full. Therefore, they are the owners of the premises pursuant to the contract, and the deed should issue accordingly. And then there was the court made an oral ruling, no written word, I believe, is what I read. It was a docket entry. It was on the docket. Okay, sure. A docket entry. There was no motion to reconsider. No. I'll proceed with just quickly about the Ligon v. Williams case. That appellant site, I believe that case is distinguishable because it's a family law case. In that case, the plaintiff requested parent-child relationship and a child support order. It ended up that the trial court awarded custody to the defendant, despite there not being a motion for custody or any sort of motion regarding custody brought before the court. I don't believe that that case is distinguishable basically because in a parentage action, when one party is represented by the state, as the plaintiff was, the state's attorney can only represent people to establish parentage and child support, and it does not extend to custody, and therefore custody was not before the court. Here, however, I mean, it's not a family law case. So my contention is that the rent-to-own contract, just the filing of the forcible entry, and the fact that the defendants proved that the payment was made in full, that ownership was before the court at that point. Now, in the Rosewood v. Fisher case that I cited, that was a case that also dealt with installment contracts, and in that case there were several contract purchasers of residential real estate where the sellers, the plaintiffs, were developers and builders, and the purchasers were unhappy with the residences and wanted to bring an action after the forcible entry and detainer action was brought. And the issue was whether the trial court erred in refusing to permit the defenses that the defendants wished to be pled and heard. The appellate court stated that the defenses that the defendants wanted to be heard, going to the validity and enforceability of the contract relied upon by the plaintiffs, were germane to the distinctive purposes of the forcible entry and detainer actions, and were improperly stricken. The appellate court said whether right to possession, a plaintiff seeks to assert has a source in an installment contract for the purchase of real estate, that it's necessary that issues germane to that installment contract be brought before the court. This is important because the owner, the purchaser, is the equitable owner of the property. They're gaining equity in the property and they're also faced with a loss of possession and loss of the equity. Also that the court went on to state that the forcible entry and detainer act was amended in terms which permit matters germane to the introduction of evidence by the defendant. The appellate state that implicit in the trial court's ruling is the determination that there was sufficient compliance by the defendants with the terms of the contract. I believe that's not true because I wanted to bring it before this court that the defendants fully complied with the contract, not partially complied. And also that the trial court found the plaintiffs continued to accept payments despite them being late and without notifying the defendants that the contract was terminated. The plaintiffs elected to give notice in August of 17. That was three years after the contract should have been paid in full. Ms. Dotherton, I'm going to interrupt you one more time because I want to follow up on a question that Justice Overstreet asked you. In your closing argument, the only thing you argued was math, and these were your words. We're asking today that the forcible entry and detainer action be dismissed and for a judgment for the overpayment of $700 plus attorney fees and also judged. Just for clarity, I would ask that defendants exhibits number one and two be in the defendants. That was all you asked for in your closing argument. That was the end of your closing argument. Okay, but I asked for the deed at some point in there. Well, after the court starts its ruling, the whole issue of the deed comes up. And I guess that's my problem with this because you asked that the FD&D also be dismissed. And today kind of you're taking a ñ I asked that question during this exchange, and you're asking for more. And I'm very concerned, and I wanted to hear from you about this issue of notice. Of notice? About the transfer of a property interest. Okay, I'm not sure. Because in the transcript, the plaintiff does argue that after the expiration of 2014, this was a simple rental contract. And that argument was like one line that kind of got pushed to the side. And my concern is that those issues were not really flushed out legally. Was this a rent-to-own? Did it remain a rent-to-own contract? Did it transform into a simple rental contract after 2014? None of that was really flushed out. It was all mapped. Who paid more when? What happened to the months that were missed? Things like that. The plaintiff didn't bring up that issue at trial court level, whether it was a rent-to-own or installment. There is a statement in there at one point where the plaintiff's counsel says that. Plaintiff didn't have counsel. I'm sorry? Plaintiff didn't have counsel. Or Mr. Cushing. Yeah, Mr. Cushing. He says it. He claims it during one of his statements. That would be his burden to prove that. I understand. And that's ‑‑ I'm ‑‑ And as far as asking for the deed, I wasn't asking for the deed until I knew what the trial court's determination was. The trial court could have said, no, payment wasn't made in full. I didn't know that. Once the trial court made the determination, we paid it in full, overpaid in fact, and the deed should issue. Okay. So I believe that's why my statement came at the end after I heard the trial court's determination. All right. So your question has to apply. Yes. Yes. Thank you very much. I think the time has expired. Yes. Thank you. Thank you. Thank you for your argument. Mr. Verveto? Just a couple of points I wanted to raise. With the Ligon V. Williams case, she's absolutely correct. That is a paternity and child custody, a family case. But in that situation, the point for raising that was the fact that it dealt with what was a justiciable issue that could be properly before the court, pleadings, complaints, and other, I think. Your Honors have alluded to that previously. The other point I would like to make in the case that was cited in the brief, Rosewood Corporation v. Fisher, the court quotes another case and says that forcible entry in a detainer is a summary statutory proceeding to adjudicate rights to possession and is unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession. And beyond that, it goes on to draw a distinction with an installment contract that equity is valid or vested, not vested, but there's an equitable interest in the contract purchasers at that point in time. And that case is what, sir? Well, it was Rosewood Corporation v. Fisher cited in the appellant's counsel's brief, and they were citing Bleck, I believe, v. Cosgrove. Thank you. Thank you. Okay, this is an interesting matter. It will be taken under advisement. Thank you for your arguments. We're going to take a short recess. Thank you.